UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
STEPHANIE BUCALO,

                         Plaintiff,                  **MEMORANDUM & ORDER**
 -against-                                     04 CV 3187 (DRH) (WDW)

SHELTER ISLAND UNION FREE
SCHOOL DISTRICT,

                         Defendant.
----------------------------------------------------------X
**APPEARANCES:**

**BERNBACH LAW FIRM**
Attorneys for Plaintiff
245 Main Street
White Plains, New York 10601
By:    Jeffrey M. Bernbach, Esq.
        Jason Bernbach, Esq.

**DEVITT SPELLMAN BARRETT, LLP**
Attorneys for Defendant
50 Route 111
Smithtown, New York 11787
By:    Jeltje De Jong, Esq.


**HURLEY, Senior District Judge:**

       Plaintiff Stephanie Bucalo ("plaintiff" or "Bucalo") filed suit against defendant Shelter Island Union Free School District ("defendant" or the "District") for violations of the Age Discrimination in Employment Act ("ADEA"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), and the New York State Human Rights Law ("NYSHRL"), claiming that she was discriminated against on the basis of her age and in retaliation for filing a claim of discrimination with the Equal Employment Opportunity Commission ("EEOC"). The case was tried before a jury over a period of four days, at the conclusion of which the jury returned a verdict in favor of defendant. The jury found that plaintiff did not prove by a

preponderance of the evidence that she was denied employment with defendant: (1) because of her age, (2) in retaliation for filing an age-based EEOC Charge, or (3) in retaliation for filing a gender-based EEOC Charge. (*See* Verdict Sheet, dated March 19, 2010, Docket No. 106.)

Presently before the Court is plaintiff's motion pursuant to Federal Rule of Civil Procedure 50(b) for judgment as a matter of law or, in the alternative, for a new trial pursuant to Rule 59. For the reasons set forth below, the motion is denied.

## *BACKGROUND*

In July 1999, plaintiff applied for the position of Library Media Specialist with the District. She was interviewed by then Superintendent Gilbert DeCicco who declined to hire her. She subsequently filed a charge of age and sex discrimination against the District with the EEOC but did not file a lawsuit arising out of this incident.

Thereafter, in May 2003, plaintiff reapplied for the same position. She was 46 years old. Of the twelve candidates who applied, Kenneth Lanier ("Lanier"), the District's new Superintendent, selected four candidates to receive interviews; Plaintiff was not chosen. Both parties agree that Lanier was the sole decision maker in this regard. The four finalists were interviewed by a six-person committee, including Lanier. The position was ultimately offered to Christina Chrabolowski, a 32-year old female.

Plaintiff initiated the present lawsuit on July 27, 2004, alleging discrimination based on her age and retaliation based on her initial EEOC complaint. In February 2005, defendant noticed Lanier for a videotaped deposition. Lanier responded that he was too ill with Lou Gehrig's disease to be deposed. However, on March 16, 2005, Lanier provided defendant with an affidavit wherein he advanced his rationale for not granting plaintiff an interview and

2

explained why the District ultimately decided to hire Ms. Chrabolowski. Plaintiff synopizes the substance of that affidavit thusly: "At paragraphs 12 and 23 of his March 16, 2005 barred-as-inadmissible-hearsay affidavit, Lanier sets forth a number of alleged legitimate, nondiscriminatory reasons he claims to have been the grounds for his decision to reject plaintiff for the Library Media Specialist position at the initial, pre-interview stage of the 2003 hiring process. Specifically in that regard, he cites, at paragraph 12, (a) plaintiff's lack of 'staying power,' as evidenced by her having 'held approximately 13 positions since 1992,' and by those positions having been 'short service positions (primarily one year or less)'; (b) 'her longest tenure in any one position [having been] that of real estate broker'; (c) her 'not [having] worked in the field [o]f library science since 2000'; and, at paragraph 13, (d) her 'lack of full fledged and relevant teaching experience over the past decade.'" (Pl.'s Mem. at 3 (footnote omitted).)

On June 21, 2005, Lanier produced a second affidavit wherein he affirmed the statements made in his previous affidavit and asserted that his health was deteriorating rapidly. Approximately six weeks later, on August 7, 2005, Lanier passed away. That development caused plaintiff to file several unsuccessful motions for summary judgment based on Lanier's unavailability. (See this Court's Memoranda and Orders filed on February 1, 2007 (Docket No. 46), September 13, 2007 (Docket No. 56), and January 15, 2010 (Docket No. 81), all of which discuss, to varying degrees, arguments which largely track those currently advanced by plaintiff in support of the relief requested.) During that same time frame, specifically on November 16, 2009, the Court issued a bench decision denying defendant's motion in limine and ruling that Lanier's affidavits would not be admissible at trial. Finally, with respect to pretrial motions, the Court, on March 15, 2010, issued a bench decision denying plaintiff's motions in limine, which

3

sought to prevent defendant at trial from (1) offering any evidence in support of its alleged nondiscriminatory reason for not granting plaintiff an interview, and (2) disputing that plaintiff meet the qualification prong of her prima facie case.

Trial commenced March 16, 2010. At the conclusion of defendant's case, both parties moved for judgment as a matter of law pursuant to Rule 50. Both motions were denied for the reasons stated on the record. The jury rendered its verdict on March 19, 2010, and plaintiff's motion was filed March 26, 2010.[1] No citations to the trial record are provided by plaintiff in connection with the present motion.

## *DISCUSSION*

### I. **Legal Standards**

#### A. *Motion for Judgment as a Matter of Law – Rule 50(b)*

"The standard governing motions for judgment as a matter of law [ ] pursuant to Rule 50 [of the Federal Rules of Civil Procedure], formerly denominated motions for directed verdict or motions for judgment notwithstanding the verdict, is well established." *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.,* 136 F.3d 276, 289 (2d Cir. 1998) (internal citations omitted). A Rule 50 motion "'may only be granted if there exists such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or the evidence in favor of the movant is so overwhelming that reasonable and fair-minded [persons] could not have arrived at a verdict against [it].'" *Kinneary v. City of New York*,

---

[1] Plaintiff filed a Notice of Appeal of the Judgment on April 13, 2010. Federal Rule of Appellate Procedure 4(B)(i) provides: "If a party files a notice of appeal after the court announces or enters a judgment – but before it disposes of any motion listed [above, including a motion pursuant to Rules 50 or 59] – the notice becomes effective to appeal a judgment or order, in whole or in part, when the order disposing of the last such remaining motion is entered."

4

601 F.3d 151, 155 (2d Cir. 2010) (alterations in original) (quoting *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 133 (2d Cir. 2008)). In considering the motion, "[a] court 'must give deference to all credibility determinations and reasonable inferences of the jury,' and may not weigh the credibility of witnesses or otherwise consider the weight of the evidence." *Caruolo v. John Crane, Inc.*, 226 F.3d 46, 51 (2d Cir. 2000) (quoting *Galdieri-Ambrosini,* 136 F.3d at 289); *see also This is Me, Inc. v. Taylor*, 157 F.3d 139, 142 (2d Cir. 1998) (noting that the issue on a Rule 50 motion is whether "'the evidence is such that, without weighing the credibility of witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [people] could have reached.'" ) (quoting *Cruz v. Local Union No. 3, Int'l Bd. of Elec. Workers*, 34 F.3d 1148, 1154-55 (2d Cir. 1994)).

### B. Motion for a New Trial – Rule 59

A "motion for a new trial 'ordinarily should not be granted unless the trial court is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice.'" *Patrolmen's Benevolent Ass'n of City of New York v. City of New York*, 310 F.3d 43, 54 (2d Cir. 2002) (quoting *Atkins v. New York City*, 143 F.3d 100, 102 (2d Cir. 1998)). "A new trial may be granted, therefore, when the jury's verdict is against the weight of the evidence." *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 133 (2d Cir. 1998). "Unlike judgment as a matter of law, a new trial may be granted even if there is substantial evidence supporting the jury's verdict." *Id.* at 134; *accord Manley v. AmBase Corp.*, 337 F.3d 237, 244 (2d Cir. 2003). On a motion for a new trial pursuant to Rule 59, a court may weigh the evidence and need not view the evidence in a light most favorable to the defendants. *See Song v. Ives Labs., Inc.* 957 F.2d 1041, 1047 (2d Cir. 1992). Indeed, "the district court is permitted to

5

'examine the evidence through its own eyes.'" *Green v. City of New York*, 359 Fed. Appx. 197, 199 (2d Cir. Dec. 30, 2009) (summary order) (quoting *Meloff v. New York Life Ins. Co.,* 240 F.3d 138, 147 (2d Cir. 2001)). "A court considering a Rule 59 motion for a new trial must bear in mind, however, that the court should only grant such a motion when the jury's verdict is 'egregious.' Accordingly, a court should rarely disturb a jury's evaluation of a witness's credibility." *DLC Mgmt. Corp.,* 163 F.3d at 134 (citing *Metromedia Co. v. Fugazy*, 983 F.2d 350, 363 (2d Cir. 1992), *abrogated on other grounds by Gustafson v. Alloyd Co.*, 513 U.S. 561 (1995)).

## II.  *Positions of the Parties*

### A.  *Plaintiff's Position*

Plaintiff's position is essentially three pronged: (1) Lanier was admittedly the sole decision maker and, accordingly, no one else was able to provide direct evidence of the reasons underlying his decision not to interview plaintiff, (2) circumstantial evidence was inadmissible for that purpose, thereby precluding defendant from "carrying its burden at the second stage of the *McDonnell Douglas* burden - shifting scheme" of proffering a legitimate, nondiscriminatory reason for not affording plaintiff an interview (Pl.'s Mem. at 1), and (3) that scenario, coupled with the Court's conclusion at the end of the evidence that she had made out a prima facie case, dictates that judgment on liability must be entered for plaintiff as a matter of law.

### B.  *Defendant's Position*

Defendant's position is synopsized in the following excerpts from defense counsel's affirmation in opposition:

> 2. . . . Plaintiff would have this Court grant her motion simply because she believes that she established her prima facie case.

> 3. . . . Plaintiff claims that she was not required to do more than present her prima facie case. According to her argument, because Mr. Lanier died, she should win. . . , [and]
>
> 7. The resumes, letters of reference, ages of successful candidates (2 being within the protected category and one being older than plaintiff) constitute circumstantial evidence that would allow the jury to conclude that the District's decision was not motivated by discriminatory animus.

(Aff. of Jeltje De Jong, dated Mar. 30, 2010 ("De Jong Aff.") ¶¶ 2, 3, 7.)

### III. *Questions Presented*

Plaintiff's Rule 50(b) motion gives rise to two questions: (1) did the Court, in denying defendant's Rule 50(a) motion, conclude that plaintiff proved prima facie cases of age discrimination and retaliation or that, instead, she simply presented adequate evidence which, if believed by the trier of fact, would suffice for that purpose, and (2) did the death of the sole decision maker preclude defendant from offering any evidence in opposition to plaintiff's claims, or in endeavoring to meet its burden of coming forward with a non-discriminatory reason for its decision.

### IV. *Plaintiff's Rule 50(b) Motion for Judgment is Denied*

For the reasons set forth below, plaintiff's Rule 50(b) motion is denied.

#### A. *Preliminary Observations Concerning the Burden - Shifting Framework for Evaluating Employment Discrimination Claims Under McDonnell Douglas Corp v. Green, 411 U.S. 792, 802 (1973)*

In *Texas Department of Community Affairs v. Burdine,* the Supreme Court synopsized its holding in *McDonnell Douglas* thusly:

> In *McDonnell Douglas v. Green*, we set forth the basic allocation of burdens and order of presentation of proof in a Title VII case alleging discriminatory treatment. First, the plaintiff has the burden of proving by the preponderance of the evidence a

prima facie case of discrimination. Second, if the plaintiff
succeeds in proving the prima facie case, the burden shifts to the
defendant to articulate some legitimate, nondiscriminatory reason
for the employee's rejection. Third, should the defendant carry
this burden, the plaintiff must then have an opportunity to prove by
a preponderance of the evidence that the legitimate reasons offered
by the defendant were not its true reasons, but were a pretext for
discrimination.

> The nature of the burden that shifts to the defendant should
> be understood in light of the plaintiff's ultimate and intermediate
> burdens. The ultimate burden of persuading the trier of fact that
> the defendant intentionally discriminated against the plaintiff
> remains at all times with the plaintiff. The *McDonnell Douglas*
> division of intermediate evidentiary burdens serves to bring the
> litigants and the court expeditiously and fairly to this ultimate
> question.

> The burden of establishing a prima facie case of disparate
> treatment is not onerous. The plaintiff must prove by a
> preponderance of the evidence that she applied for an available
> position for which she was qualified, but was rejected under
> circumstances which give rise to an inference of unlawful
> discrimination. The prima facie case serves an important function
> in the litigation: it eliminates the most common nondiscriminatory
> reasons for the plaintiff's rejection. [The] prima facie case raises
> an inference of discrimination only because we presume these acts,
> if otherwise unexplained, are more likely than not based on the
> consideration of impermissible factors. Establishment of the prima
> facie case in effect creates a presumption that the employer
> unlawfully discriminated against the employee. If the trier of fact
> believes the plaintiff's evidence, and if the employer is silent in the
> face of the presumption, the court must enter judgment for the
> plaintiff because no issue of fact remains in the case.

450 U.S. 248, 252-254 (1981) (internal quotation marks, citations and footnotes deleted).

*McDonnell Douglas* is germane in evaluating both Bucalo's Rule 50(b) Title VII and

ADEA claims.[2] However, although judges and practitioners versed in the employment

---

[2] ADEA claims are also analyzed under the *McDonnell Douglas* burden shifting framework. *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 76 (2d Cir. 2005).

8

discrimination field typically can recite the case's framework, as refined by such later Supreme Court cases as *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248 (1981) and *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993) essentially verbatim, and appreciate its laudable goal of requiring employers in the absence of direct evidence of discrimination to join the fray by proffering nondiscriminatory reasons for their actions, the framework's application in those instances where the judge is not the trier of fact, as here, not infrequently causes confusion.

In *McDonnell Douglas, Burdine* and *St. Mary's Honor Center*, the trial judge's role included serving as the trier of fact. Indeed, the right to a jury trial in Title VII cases did not come about until November 21, 1991, that being the effective date of the 1991 amendments to Title VII which enabled plaintiffs to seek damages and either party to demand a jury trial. *See generally*, *Joseph v. N.Y.C. Bd. of Educ.*, 171 F.3d 87, 91 (2d Cir. 1999).

The *McDonnell Douglas* framework fits comfortably in a bench trial setting. As the trier of fact, the trial judge is in a position to make credibility determinations towards the goal of determining whether plaintiff has proven a prima facie case thereby triggering the rebuttable presumption underscored by Bucalo and which, if not rebutted, entitles plaintiff to prevail "as a matter of law even without evidence that would support a reasonable finding of discriminatory motivation." *James v. New York Racing Ass'n,* 233 F.3d 149, 154 (2d Cir. 2000). That comfortable fit is absent, however, when the trier of fact is a jury, a setting divorced from the framework's genesis.

Implicit in plaintiff's position is the belief that my role as trial judge included serving as the trier of fact in determining whether she proved her prima facie cases. That would be correct had this been, contrary to the fact, a bench trial as in *McDonnell Douglas*, *Burdine*, and *St.*

*Mary's Honor Center*. But here, the jury was the trier of fact, not only as to plaintiff's claims per se, but also as to the prima facie subsets of those claims. Before explaining why that is so, attention will be focused on what I said in ruling on the defendant's Rule 50(a) motion at the conclusion of the evidence.

> **B.** ***The Court, in Denying Defendant's Rule 50(a) Motion, and Stating That Plaintiff had Made out a Prima Facie Case, was Indicating That her Evidence Called for the Case to go to the Jury, not That she had Proven the Prima Facie Components of her Claims.***

By way of introduction, *Burdine* explains that "[t]he phrase 'prima facie case' not only may denote the establishment of a legally mandatory, rebuttable presumption, but also may be used by courts to describe the plaintiff's burden of producing enough evidence to permit the trier of fact to infer the fact at issue. 9 J. Wigmore, Evidence § 2494 (3d ed. 1940). *McDonnell Douglas* should have made it apparent that in the Title VII context we use 'prima facie case' in the former sense." 450 U.S. 254 n.7.

In my March 17, 2010 bench ruling on defendant's Rule 50(a) motion, I adopted the latter usage of the term, stating:

> So in essence what I am saying is that I think that the plaintiff has made out a prima facie case as to each of these core claims: discrimination and retaliation. Accordingly, I believe that they should go to the jury. Therefore, the application by the defense [for] judgment as a matter of law as to each of these two claims is denied.[3]

Clearly, the Court was not indicating in its Rule 50(a) ruling that plaintiff had proven her prima facie case of age discrimination and retaliation thus giving rise to the *McDonnell Douglas* rebuttable presumption; nor could I have done so given that the jury was the trier of fact. *(See*

---

[3] Unofficial Tr. at 2. Neither party ordered the trial transcript; at my request, the Court Reporter transcribed the text of my Rule 50(a) ruling.

discussion infra.) Parenthetically, had I then been mindful, either via my own recollection or through comment by counsel of *Burdine's* footnote 7, the plaintiff's proof would have been subject to a lesser Rule 50(a) standard, to wit, whether she had produced sufficient proof which, if believed by the trier of fact, was adequate to prima facially establish her claims.

It is well established that it is inappropriate to charge a jury with the *McDonnell Douglas* burden – shifting analysis (*see Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 118 (2d Cir 2000); *Sharkey v. Lasmo*, 214 F.3d 371, 374 (2d Cir 2000); *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 53 (2d Cir. 1998)) and, therefore, it is not surprising that neither party asked me to do so. It also is not surprising that plaintiff did not suggest that special interrogatories be presented to the jury to elicit its determination as to whether plaintiff had proven her prima facie cases, given her mistaken belief that the decision was mine to make.

>   **C.**  *The McDonnell Douglas Rebuttable Presumption Does not Arise Unless and Until the Trier of Fact Finds That Plaintiff has Proven the Elements of her Prima Facie Case by a Preponderance of the Evidence*

Prescinding for the moment from the question of whether defendant should have been permitted to advance, via circumstantial evidence, a nondiscriminatory reason for not listing plaintiff as one of the four applicants to be interviewed, the more fundamental question is when did the *McDonnell Douglas* rebuttal presumption arise. Was it, as plaintiff contends, when the Court denied defendant's Rule 50(a) motion?[4]

Although some language in *McDonnell Douglas* and its numerous progeny lend visceral

---

[4] As a practical matter, that threshold question rarely arises. Almost invariably, once a plaintiff employee has completed her direct case, the defendant employer proffers a nondiscriminatory reason for its actions thus culling any potential rebuttable presumption issue from the dispute.

support for plaintiff's position, that support evaporates upon closer scrutiny. Thus, for instance the statement in *Burdine*, representative of the type upon which plaintiff places considerable stock, to wit: "Establishment of the prima case in effect creates a presumption that the employer discriminated against the employee," is immediately followed by the instruction that "<u>[i]f the trier of fact believes the plaintiff's evidence</u>, and if the employer is silent in the face of the presumption, the court must enter judgment for the plaintiff because no issue of fact remains in the case." *Burdine*, 450 U.S. at 254 (emphasis added). The following excerpt from *St. Mary's Honor Center* is also instructive in that it draws the pivotal distinction between when plaintiff's evidence of a prima facie case is introduced, and when it is accepted as credible by the trier of fact thus activating the presumption:

> If the finder of fact answers affirmatively-if it finds that the prima facie case *is* supported by a preponderance of the evidence-it *must* find the existence of the presumed fact of unlawful discrimination and *must*, therefore, render a verdict for the plaintiff [should the defendant remain silent]. Thus, the *effect* of failing to produce evidence to rebut the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), presumption is not felt until the prima facie case has been *established*, either as a matter of law (because the plaintiff's facts are uncontested) [not our situation] or by the factfinder's determination that the plaintiff's facts are supported by a preponderance of the evidence. . . . As a practical matter, however, and in the real-life sequence of a trial, the defendant *feels* the "burden" not when the plaintiff's prima facie case is *proved*, but as soon as evidence of it is *introduced*. The defendant then knows that its failure to introduce evidence of a nondiscriminatory reason will cause the judgment to go against it *unless* the plaintiff's prima facie case is held to be inadequate in law or fails to convince the factfinder. It is this practical coercion which causes the *McDonnell Douglas* presumption to function as a means of "arranging the presentation of evidence," *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 986, 108 S.Ct. 2777, 2784, 101 L.Ed.2d 827 (1988).

*St. Mary's Honor Center,* 509 U.S. at 510, n.3 (some internal citations deleted) (emphasis in

original).

In essence, *Burdine* and *St. Mary's Honor Center* make clear that the rebuttable presumption does not materialize until the trier of fact – in Bucalo's case, the jury – is convinced that plaintiff has proven her prima facie claims by a preponderance of the evidence. Which is to say, while the defendant employer may, in language of *St. Mary's Honor Center*, *"feel"* the burden of production shifting to him upon plaintiff's "introduc[tion]" of a prima facie case – or, indeed, when the trial court in a jury trial denies a defendant's Rule 50(a) motion at the conclusion of plaintiff's case in chief – the presumption does not, in fact, come about unless and until the prima facie elements are proven to the jury. That same message has been conveyed in numerous cases which have had occasion to address the subject. *See*, *e.g., Perry v. New York Dep't of Labor*, 223 Fed. Appx 63, 64 (2d Cir. May 1, 2007) (summary order) ("A rational jury could have concluded that Perry did not make a *prima facie* case of discrimination because he did not present evidence that he performed his job satisfactorily. A rational jury could have also found that Perry did not make a *prima facie* case of retaliation because it could have found that Perry did not actually complain of unlawful discrimination until the decision to terminate him had already been made, and that, until that point, the Department did not know about the alleged discrimination"); *James*, 233 F.3d at 154; *Walker v. Mortham*, 158 F.3d 1177, 1184 (11th Cir. 1998) ("If the prima facie case remains unrebutted, . . . the plaintiff is entitled to judgment in her favor as a matter of law, provided that the trier of fact believes the evidence put forward to establish the prima facie case"); *Loeb v. Textron*, 600 F.2d 1003, 1016 (1st Cir. 1979) ("If the defendant [ ] moves for a directed verdict [at the conclusion of plaintiff's ADEA case in chief], the judge will be able to determine whether enough evidence has been introduced to allow the

jury to find each of the disputed elements of the prima facie case . . . ."); *Pearson v. Peake*, 2010 WL 1080936, at *5 (S.D.Fla. Jan. 7, 2010).

Application of the above case law to Bucalo's trial and adverse trial verdict indicates that the rebuttable presumption upon which her Rule 50(b) and Rule 59 motions hinge did not arise upon my denial of defendant's Rule 50(a) motion. Instead, the presumption remained non-existent pending the jury's determination that she had proved (1) that the failure to afford her an interview occurred "under circumstances which give rise to an inference of unlawful discrimination," (*Burdine,* 450 U.S. at 253 (referring to the final element of a prima facie case of unlawful discrimination)) and/or (2) that the then superintendent of schools was aware of and acted upon information that plaintiff had years before filed an EEOC complaint against the District during a prior superintendent's tenure (that being one of the elements of her prima facie retaliation claim). From the jury's verdict in favor of defendant, we know it concluded that the plaintiff failed to establish either of her causes of action. How the jury would have responded to special interrogatories essentially tracking the disputed portions of plaintiff's prima facie claims is problematic given (a) plaintiff's mistaken belief that the Court was the trier of fact vis-a-vis the subject prima facie claims and (b) relatedly, the Court not being asked by plaintiff to direct such inquiries to the jury.

In sum, plaintiff's position that the Court's denial of defendant's Rule 50(a) motion at conclusion of the evidence triggered the *McDonnell Douglas* rebuttal presumption, is mistaken. That determination renders the second question or part of plaintiff's integrated argument academic. Nonetheless, it will be addressed for the reasons indicated *infra*.

**V.    Defendant was Entitled to Rely on Circumstantial Evidence in Endeavoring to Mount a Defense to Plaintiff's Claims and to Provide a Nondiscriminatory Reason**

**for not Including Plaintiff Within the Four of the Twelve Applicants who Were Interviewed for the Position of Library Media Specialist**

As noted in the prior section of this opinion, plaintiff, in seeking judgment as a matter of law, or, alternatively, a new trial, has not established that the *McDonnell Douglas* rebuttable presumption of discrimination ever materialized, thereby rendering academic plaintiff's second point about defendant's proof and arguments at trial. The sole question, then, for the jury was whether plaintiff, unaided by the presumption, proved her case which, of course, was answered in the negative. However, given the unusual nature of the present scenario, together with the well crafted, thought-provoking arguments advanced by counsel, the subject will be discussed.

To capsulize the germane facts, it is undisputed that Lanier received twelve applications for the library media specialist position for the 2003/04 school year from which he selected four persons to be interviewed. Those individuals were Christina Chrabolowski, 32, Mark Januszewski, 40, Kimberly Jayne, 34, and Patricia Wobert, 53. Their resumes, together with plaintiff's, were introduced into evidence as those reviewed by Lanier. Lanier died in August, 2005, without having been deposed by plaintiff or by defendant. And, as mentioned earlier, the Court granted plaintiff's motion to preclude defendant from introducing the two affidavits he prepared in the waning days of his life providing the rationale for his interview selections.

Plaintiff maintains that Lanier's death, viewed in conjunction with the Court's denial of defendant's Rule 50(a) motion, mandated judgment be entered in her favor. Circumstantial evidence, plaintiff contends, may not be utilized by the defense to fulfill its obligation to present, though not prove, a nondiscriminatory reason for not calling plaintiff in for an interview.

It is beyond cavil that Lanier alone could explain his thought processes. We will never know his exact reasons for acting as he did. But does the absence of direct evidence mean that

15

the District must remain silent, had it been, arguendo, confronted with a *McDonnell Douglas* rebuttable presumption, having no recourse to circumstantial evidence?

Experience shows that direct evidence of discrimination is rarely available to aggrieved employees. Indeed, that predicament is the predicate for *McDonnell Douglas*' burden shifting construct. Through that procedure, and the commitant use of circumstantial evidence, a plaintiff is aided in discharging his or her burden of establishing that it is more likely than not that discrimination was behind the challenged employment decision. No greater certitude or quantum of proof as to the employer's actual motivation is required for a plaintiff to prevail.[5]

A defendant, of course, bears no burden of proof under *McDonnell Douglas* and yet plaintiff insists that indirect evidence, in effect, is off-limits to the defense. Why such an anomaly is supposedly so has not been persuasively explained. To argue, as plaintiff implicitly does by extension, that in any situation akin to the one at bar, the unavailability of the decision maker is fatal to the defense, falls far short of being convincing. By way of a hypothetical imbued with hyperbole for emphasis sake, if an unsuccessful applicant for a particular position was barely able to survive the defendant's motion for judgment as a matter of law based on his meager, albeit adequate qualifications for purposes of proving a prima facie case, while his competitor applicants were established leaders in the subject field, it is problematic at best to suggest that the defendant employer could not use the applicants' resumes, evidencing the

---

[5] In a Title VII case, the plaintiff is required to prove by a preponderance of the evidence that discrimination was *a* motivating factor for the employer's action, whereas under ADEA, the aggrieved employee "must prove, by a preponderance of the evidence, that age was the 'but - for' cause of the challenged adverse employment action." *See Gross v. FDL Financial Services, Inc.*, 129 S.Ct. 2343 (2009) and page 2352 of *Gross* for the quoted excerpt from that decision.

16

disparate qualifications, and related arguments to defend against the unsuccessful, marginal applicant's discrimination claim and to present a nondiscriminatory reason for rejecting that party's application for the jury's consideration. *Cf. Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1279-80 (10th Cir. 1999).

That being said, the Court recognizes that an employer's effort to address a *McDonnell Douglas* rebuttable presumption is a formidable task absent the decision maker. Such an effort must be evidentially grounded. But the District's position complies with that requirement in that plaintiff's resume and those of the interviewees were in evidence. Plaintiff argues now – although not, if my memory serves me correctly, during defense counsel's summation – that defense counsel basically parroted the reasons listed in the excluded Lanier affidavits during her closing argument. To the extent there was some overlap, that would appear to flow naturally from a comparison of the resumes. Simply put, the resumes speak for themselves; it would not have been improper - even if, arguendo, the rebuttable presumption had arisen - for defense counsel to underscore the patent differences she perceived among the resumes during her summation even if some of those differences were apparently also noted by Lanier and, presumably, later by the jury based on their verdict.

In sum, the Court rejects as unpersuasive the portion of movant's integrated argument which urges that Lanier's death under the attendant circumstances precluded the District from defending itself from plaintiff's charges, including endeavoring to present a nondiscriminatory reason for not selecting her among the interviewees for the subject position.

**VI.**    *Plaintiff's Alternate Request for a new Trial is Denied.*

The standards applicable to a Rule 59 application for a new trial are set forth *supra*. A

juxtapositioning of those standards or considerations against the facts at hand counsels against granting the alternate relief sought, primarily for the reasons articulated with respect to plaintiff's Rule 50(b) motion. The case was well presented by both sides to a conscientious jury which rendered a verdict consistent with the evidence. A new trial is not warranted.

## *CONCLUSION*

The linchpin for plaintiff's interrelated Rule 50(b) and Rule 59 motions is the mistaken belief that the *McDonnell Douglas* rebuttable presumption of discrimination was activated contemporaneously with my denial of defendant's Rule 50(a) motion at the conclusion of the evidence even though the case was tried to a jury, not the Court.

For the reasons provided above, plaintiff's motions for judgment as a matter of law or, alternatively, for a new trial are denied.

**SO ORDERED.**

Dated: Central Islip, New York
April 21, 2011

/s/
Denis R. Hurley
Unites States District Judge